UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENALDO RAMON PRESSWOOD,

                Petitioner,                        Case No. 21-cv-12878
                                                      Hon. Matthew F. Leitman

v.

BRYAN MORRISON,

                Respondent.

_____/

**ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF Nos. 1, 11), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Renaldo Ramon Presswood is a state inmate in the custody of the Michigan Department of Corrections.   In 2017, a jury in the Genesee County Circuit Court convicted Presswood of first-degree murder.   The state trial court then sentenced Presswood to life in prison without the possibility of parole.

On December 2, 2021, Presswood filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)   After exhausting additional claims in state court, Presswood filed a supplemental petition. (*See* Supp. Pet., ECF No. 11.)   In his petition, as supplemented, Presswood raises claims concerning, among other things, the jury instructions, the conduct of the

1

prosecutor, the admission of allegedly false evidence, and the effectiveness of his trial and appellate counsel. (*See id.*)

The Court has carefully reviewed all of Presswood's claims, and for the reasons explained below, it **DENIES** the petition as supplemented, **DENIES** Presswood a certificate of appealability, and **DENIES** Presswood leave to appeal *in forma pauperis*.

## I

## A

Presswood's conviction arose from an argument outside a Flint, Michigan nightclub in 2014 that resulted in the vehicular death of a man named Robert Mayers. The Michigan Court of Appeals described the relevant facts as follows:

> Defendant was convicted of using his car to hit and run over Robert Mayers, causing his death, on August 3, 2014, outside a Flint nightclub. In the early morning hours, defendant drove his car to the after-hours club; Mayers was also at the club. The prosecution presented evidence that defendant and Mayers cordially conversed in the parking lot but, at some point, an argument ensued between them. The argument ended, and witnesses believed that it had ended amicably. However, after the parties were in their respective cars, defendant rammed his car into Mayers' car. Mayers got out of his car, walked to defendant's car, punched defendant through the open driver's side window, and then ran toward the club. Defendant put his car in the drive gear, chased Mayers down the sidewalk, drove through a fence into a parking lot, and ran over Mayers. Defendant turned around and ran over Mayers a second time before fleeing the scene. The

2

police investigation quickly led to defendant, who initially claimed to be at a different location at the time of the incident. At trial, the defense admitted that defendant was at the club and ran over Mayers, but denied that the killing was premediated and intended, asserting that defendant had not used his car as a weapon, but used it to quickly leave the area after being punched by Mayers.

*People v. Presswood*, No. 339360, 2018 WL 5276305, at \*1 (Mich. Ct. App. Oct. 18, 2018).

## B

Following his conviction and sentencing, Presswood filed an appeal of right with the Michigan Court of Appeals in which he raised claims concerning the jury instructions, his right to present a defense, the sufficiency of the evidence, the conduct of the prosecutor, the admission of evidence, and the effectiveness of his trial counsel. The Michigan Court of Appeals concluded that all of Presswood's claims lacked merit, and it affirmed his conviction. *See id*. at \*1–8. Presswood then filed an application for leave to appeal with the Michigan Supreme Court, and that court denied leave because it was "not persuaded that the questions presented should be reviewed by th[at c]ourt." *People v. Presswood*, 924 N.W.2d 550, 550 (Mich. 2019).

Presswood thereafter filed a motion for relief from judgment with the state trial court. In that motion, he raised claims concerning the effectiveness of his trial and appellate counsel, the trial court's control of the proceedings, and his sentencing.

3

The trial court denied the motion on the basis that all of Presswood's claims were either raised, or could have been raised, in his direct appeal. (*See People v. Presswood*, No. 15-037810-FC (Genesee Cnty. Cir. Ct. Aug. 5, 2020), ECF No. 15-17, recons. denied (Aug. 20, 2020), ECF No. 15-24, PageID.1828-1829.) Presswood then filed an application for leave to appeal with the Michigan Court of Appeals, and that court denied leave for failure to establish that the trial court erred in denying the motion for relief from judgment. (*See People v. Presswood*, No. 354676 (Mich. Ct. App. Nov. 17, 2020), ECF No. 15-22, PageID.1614.) Presswood also filed an application for leave to appeal with the Michigan Supreme Court, and that court denied leave pursuant to Michigan Court Rule 6.508(D). *See People v. Presswood*, 965 N.W.2d 212, 212 (Mich. 2021).

## C

On December 2, 2021, Presswood filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)   Before Respondent filed an answer or the state court record, Presswood moved to stay this case so that he could return to the state courts to exhaust a newly discovered evidence claim. (*See* Mot., ECF No. 3.)   The Court granted that motion in January 2022. (*See* Order, ECF No. 7.)

Presswood then filed a second motion for relief from judgment in the state trial court raising claims concerning the credibility of the accident reconstruction

expert and the conduct of the prosecutor.    The trial court denied the motion on the merits. (*See People v. Presswood*, No. 15-037810-FC (Genesee Cnty. Cir. Ct. Jan. 7, 2022), ECF No. 15-20.)    Presswood then filed an application for leave to appeal with the Michigan Court of Appeals, and that court denied leave pursuant to Michigan Court Rule 6.502(G).    (*See People v. Presswood*, No. 360036 (Mich. Ct. App. May 11, 2022), ECF No. 15-27, PageID.1988.)    Finally, Presswood filed an application for leave to appeal with the Michigan Supreme Court, and that court denied leave. *See People v. Presswood*, 977 N.W.2d 569, 569 (Mich. 2022).

On August 22, 2022, Presswood returned to this Court and filed motions to (1) re-open the case and (2) amend his habeas petition to add his newly exhausted claims. (*See* Mots., ECF Nos. 9, 10.)    Presswood also filed an amended/supplemental habeas petition. (*See* Am. Pet., ECF No. 11.)   The Court subsequently granted Presswood's motions and re-opened his case on its active docket. (*See* Order, ECF No. 12.)

In Presswood's habeas petition, as supplemented, he raises the following claims:

I.    A rational view of the evidence supported his request for voluntary and involuntary manslaughter instructions.    The trial court erred in refusing to give the instructions and this error was outcome determinative.

II.    He was denied his constitutional rights to a fair trial, a properly instructed jury, and his right to present a defense under United

5

States Const. amends. VI, XIV and Mich. Const. 1963 art. 1 § 17 when the court abused its discretion and refused to give a manslaughter instruction.

III.   He was denied his constitutional rights to a fair trial, a properly instructed jury, and his right to present a defense under United States Const. amends. VI, XIV and Mich. Const. 1963 art. 1 § 17 where the prosecutor committed prosecutorial misconduct where the prosecution failed to present sufficient evidence to support a verdict of first-degree murder.

IV.   He was denied his constitutional rights to raise a defense, a fair trial, and his right to due process of law under United States Const. amends. VI, XIV and Mich. Const. 1963 art. 1 § 17 where his trial counsel failed to call witnesses, failed to investigate, failed to object, and therefore failed to provide effective assistance of counsel which affected the outcome of the trial.

V.   He was denied his constitutional rights to due process of law and to a fair trial under United States Const. amend. XIV and Mich. Const. 1963 art 1 § 17 where the prosecutor committed prosecutorial misconduct by presenting the jury with witnesses who testified to known false statements which amounted to false evidence.

VI.   He was denied his constitutional rights to a fair trial and due process of law under United States Const. amend. XIV and Mich. Const. 1963 art 1 § 17 where the trial court abused its discretion where it allowed false evidence and testimony to be entered into the proceedings when the effect prejudiced the defendant.

VII.   He was denied his constitutional rights to a fair trial and due process of law under United States Const. amend. XIV and Mich. Const. 1963 art 1 § 17 where the prosecutor committed prosecutorial misconduct where she left the crime scene photos on display for the duration of the trial and tainted the views of the jurors.

6

VIII.   He was denied his state and federal constitutional rights to due process of law, to the effective assistance of appellate counsel, and to an adequate direct appeal of right.

IX.   Trial counsel failed to perform to an objective standard and provide effective assistance during trial preparation and investigation and during defendant's trial when counsel failed to consult expert witnesses to confirm/refute the State's expert witnesses that contradicts the State witnesses regarding the death of the victim.

X.   The trial court abused its discretion and committed error by failing to control proceedings at all times pursuant to M.C.L. § 768.29 and in violation of the precepts of *People v. Brocato*, 169 N.W.2d 483, 496–97 (Mich. Ct. App. 1969), and *Geders v. United States*, 425 U.S. 80, 86–87 (1976).

XI.   Appellate counsel was ineffective for not seeking an evidentiary hearing to expand the record and failing to timely file proper motions to consult with its own expert-witness assistance to confirm/refute the State expert witnesses to assist in defendant's defense.

XII.   He is entitled to jail credit in the amount of 1,059 days for time served in the Genesee County Jail prior to sentence against his life sentence pursuant to M.C.L. § 769.11(b) and, if so, does the judgment of sentence record issued by the Honorable Judge Richard B. Yuille reflect how he subtracted the 1,059 days from the life sentence imposed upon petitioner and does that error constitute a violation of the Double Jeopardy Clause against successive prosecutions and multiple punishments.

XIII.   The lead accident reconstructionist Sgt. Jason Groulx's corrupt, deceiving actions were tantamount to plain error which violated his right of due process under the Fourteenth Amendment and disclosure of lead accident reconstructionist Sgt. Jason Groulx's past corrupt criminal behavior would have affected the outcome of the case.

7

XIV.  He was denied his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process of law where the prosecutor committed prosecutorial misconduct where she argued facts not in evidence and misled the jury regarding scientific evidence from a corrupt officer who did not conduct a full, accurate, complete investigation which rendered the trial unfair.

(Pet., ECF Nos. 1, 11.)    Respondent filed an answer to the petition, as supplemented, contending that it should be denied because several claims are procedurally defaulted, certain claims are not cognizable, one claim is moot, and all of the claims lack merit. (*See* Ans., ECF No. 14.)    Presswood then filed a reply and a supplemental reply. (*See* ECF Nos. 17, 18.)

The Court has carefully reviewed all of the parties' filings and is now prepared to rule on the supplemented petition.

## III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## IV

## A

The Court begins with Respondent's argument that several of Presswood's claims are procedurally defaulted.   The Court need not undertake a procedural default analysis here because procedural default is not a jurisdictional bar to reviewing the merits of Presswood's claims. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).   A district court may bypass a procedural default analysis "when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207.   Here, the Court concludes that it is more efficient for it to proceed directly to the merits of Presswood's claims.   It does so below.

## B

Presswood first asserts that he is entitled to habeas relief because the state trial court refused to instruct the jury on voluntary and involuntary manslaughter.   The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant first argues that the trial court abused its discretion by denying his request for jury instructions on the necessarily included lesser offenses of voluntary manslaughter and involuntary manslaughter. We disagree.

9

[….]

MCL 768.32(1) permits instruction on necessarily
included lesser offenses. *People v. Reese*, 466 Mich. 440,
446; 647 N.W.2d 498 (2002). Both voluntary
manslaughter and involuntary manslaughter are
necessarily included lesser offenses of murder,
distinguished by the element of malice. *People v.
Mendoza*, 468 Mich. 527, 533-534, 540-541; 664 N.W.2d
685 (2003). "Consequently, when a defendant is charged
with murder, an instruction for voluntary and involuntary
manslaughter must be given if supported by a rational
view of the evidence. *Id*. at 541.

Reversal of a trial court's jury instruction decision is
appropriate only where the offense was clearly supported
by the evidence; an offense is clearly supported where
there is substantial evidence to support it. [*People v.
McMullan*, 488 Mich. 922; 789 N.W.2d 857 (2010).]

Malice exists where there is "an act done with either an
intent to kill, an intent to commit great bodily harm, or an
intent to create a very high risk of death or great bodily
harm with knowledge that death or great bodily harm was
the probable result." *Gillis*, 474 Mich. at 138 (citation and
quotation marks omitted). In contrast, "[v]oluntary
manslaughter requires a showing that (1) defendant killed
in the heat of passion, (2) this passion was caused by an
adequate provocation, and (3) there was no lapse of time
during which a reasonable person could have controlled
his passions." *People v. Roper*, 286 Mich. App. 77, 87;
777 N.W.2d 483 (2009). "[P]rovocation is [that]
circumstance that negates the presence of malice."
*Mendoza*, 468 Mich. at 536.

The provocation necessary to mitigate a homicide from
murder to manslaughter is that which causes the defendant
to act out of passion rather than reason; that is, adequate
provocation is that which would cause the reasonable

10

person to lose control. [*Roper*, 286 Mich. App. at 87 (citation and quotation marks omitted).]

Based on the evidence presented at trial, the trial court properly declined to provide a voluntary manslaughter instruction because of the absence of the degree of provocation necessary to mitigate the killing from murder to manslaughter. *Roper*, 286 Mich. App. at 87. Defendant argues that adequate provocation existed because of "the argument and attack by Mayers." However, the evidence showed that the argument between the parties had ended amicably. Then, after both parties were sitting in their cars, defendant rammed his car into Mayers's car. In turn, Mayers then punched defendant through defendant's car window and ran away. While Mayers's conduct may have angered defendant, it was not adequate provocation to move a reasonable person to put his car in drive, chase a person down a sidewalk, hit the person, run over the person, turn around, and run over the person a second time. Defendant has not adequately explained how Mayers having alcohol and drugs in his system is relevant in evaluating defendant's state of mind and conduct of catching up to a fleeing Mayers and driving over him twice. Accordingly, because no reasonable jury could have determined that the provocation in this matter was adequate to cause a reasonable person to lose control in the manner that defendant did, the trial court did not abuse its discretion by declining to give a voluntary manslaughter instruction.

The trial court also did not err by declining to instruct the jury on involuntary manslaughter. As it relates to this case, if a homicide "was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *People v. Holtschlag*, 471 Mich. 1, 21-22; 684 N.W.2d 730 (2004). Thus, defendant was entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding that Mayers's

11

death was caused by an act of gross negligence or an intent to injure, and not malice. Defendant argues that a rational view of the evidence supports that he acted with gross negligence, without malice, because he was merely quickly driving away from the club after being punched by Mayers and did not intend to strike Mayers. There was no evidence, however, to support this theory. To the contrary, the only rational conclusion to be drawn from the evidence, as previously discussed, is that, at a minimum, defendant had "an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Gillis*, 474 Mich. at 138 (citation and quotation marks omitted). Jamar Brewer, who was in the car with defendant, testified that, after Mayers punched defendant, defendant put his car in the drive gear, chased Mayers down the sidewalk, drove through a fence, and hit Mayers. Defendant did not stop at that point, but turned around, drove back through the fence, and "ran [Mayers] over again" before fleeing the scene. A club employee similarly testified that Mayers was running toward the club when defendant took off after him, hit Mayers once, "turned around in the ... church parking lot, and hit [Mayers] again." Considering all the evidence that was presented at trial, no rational juror could conclude that defendant's conduct of running over Mayers two times, after chasing him and driving through a fence to catch up to him, could be characterized as only an act of gross negligence, committed without malice. Consequently, the trial court properly declined to give an involuntary manslaughter instruction.[1]

FN 1: We further note that the jury was instructed on second-degree murder as a lesser offense of first-degree murder, but defendant was convicted of first-degree murder. That the jury was convinced that defendant acted with premeditation and deliberation, thereby rejecting the intermediate offense of second-degree murder in favor of first-degree murder, reflects an unwillingness to convict on an even lesser included offense. *See People v. Wilson*,

> 265 Mich. App. 386, 396; 695 N.W.2d 351 (2005)
> (recognizing that where the jury rejects an intermediate
> lesser offense "in favor of the greater offense[,]" any
> alleged error in not instructing the jury on lesser offenses
> was harmless).

*Presswood*, 2018 WL 5276305 at *1–2 (footnote in original).

Presswood is not entitled to relief on this claim for two reasons.   First, to the extent that Presswood contests the Michigan Court of Appeals' interpretation of state law on this issue (or any other issue raised in his petition), this Court cannot grant him relief.   It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).   Thus, any alleged violations of state law by the state courts are not cognizable in this federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Second, Presswood has not shown that the Michigan Court of Appeals' rejection of this claim violates clearly established federal law "[b]ecause the Supreme Court has never held that due process requires lesser-included-offense

13

instructions in a non-capital case."[1] *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) (rejecting argument that petitioner was entitled to habeas relief because Michigan state court "refuse[d] to instruct the jury on [the lesser-included offense of] involuntary manslaughter"). *See also Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.").    And for the purposes of review under *Beck*, the Sixth Circuit has treated first-degree murder as a non-capital offense in Michigan. *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Tegeler v. Renico*, 253 F. App'x 521, 524–25 (6th Cir. 2007) (holding that due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner received a non-parolable life sentence).    Thus, the Michigan Court of Appeals' rejection of

---

[1] "In *People v Mendoza*, 468 Mich. 527, 536, 664 N.W.2d 685 (2003), [the Michigan Supreme Court] explained that manslaughter is a lesser included offense of murder. Both murder and voluntary manslaughter 'require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.' *Id.* at 540, 664 N.W.2d 685. The distinguishing element is malice, which in voluntary manslaughter is 'negated by the presence of provocation and heat of passion.' *Id.* Involuntary manslaughter, by contrast, contemplates a lesser degree of intent. *Id.* at 541, 664 N.W.2d 685. The *Mendoza* Court concluded that, because both voluntary and involuntary manslaughter are necessarily included lesser offenses and 'inferior' to murder under MCL 768.32, 'when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence.' *Id.*" *People v. Yeager*, 999 N.W.2d 490, 496 (Mich. 2023).

14

this claim was not contrary to clearly established federal law.

For all of these reasons, Presswood is not entitled to federal habeas relief on this claim.

## C

Presswood next asserts in a related claim that he is entitled to habeas relief because the state trial court's refusal to instruct the jury on voluntary and involuntary manslaughter deprived him of the right to present a defense.   The Michigan Court of Appeals considered this claim on direct review under a plain error standard of review and rejected it:

> We have already rejected the underlying claim for this challenge in the context of defendant's allegation of instructional error. This argument reiterates defendant's earlier argument, but is presented as a claim of constitutional error. As previously discussed, a rationale [sic] view of the evidence did not support either a voluntary manslaughter or involuntary manslaughter instruction, and therefore, the trial court did not err by denying defendant's request for these instructions. Because a rational review of the evidence did not support the requested manslaughter instructions, the refusal to give them did not prevent defendant from presenting a viable defense theory. Accordingly, defendant was not denied his right to present a defense, and therefore, is not entitled to appellate relief.

*Presswood*, 2018 WL 5276305, at *3.

Presswood has not shown that the Michigan Court of Appeals' decision denying relief on this claim was contrary to, or unreasonably applied, clearly

established federal law.   Simply put, Presswood has not shown that it is clearly established that the failure to instruct on a lesser-included offense violates a defendant's right to present a defense.   Moreover, Presswood has not shown that he was completely deprived of his opportunity to present his chosen defense.   That defense was that he did not act based on premeditation or deliberation and instead acted out of passion.   And he was able to seek an acquittal on that basis even without the lesser-included instructions he identifies.   Under all of these circumstances, Presswood is not entitled to federal habeas relief on this claim.

**D**

Presswood next asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his first-degree premeditated murder conviction.   The Court concludes that Presswood is not entitled to relief on this claim.

**1**

Presswood raised this claim on direct review in the Michigan Court of Appeals.   That court reviewed and rejected the claim as follows:

> First-degree premeditated murder requires proof that the defendant "intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Ortiz*, 249 Mich. App. 297, 301; 642 N.W.2d 417 (2001). Defendant contends only that there was insufficient evidence to establish the requisite element of premeditation. Premeditation and deliberation require

16

"sufficient time to allow the defendant to take a second look." *People v. Anderson*, 209 Mich. App. 527, 537; 531 N.W.2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *People v. Oros*, ⸺ Mich. ⸺, ⸺; ⸺ N.W.2d ⸺ (2018) (Docket No. 156241); slip op. at 10 (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds[.]" Id. (quotation marks, brackets, and citations omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id.* at ⸺; slip op. at 11 (citation and quotation marks omitted.) The following factors may be considered to establish premeditation: "(1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v. Unger*, 278 Mich. App. 210, 229; 749 N.W.2d 272 (2008). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[,]" which can be inferred on the basis of the record evidence. *People v. Kanaan*, 278 Mich. App. 594, 622; 751 N.W.2d 57 (2008).

Viewed in a light most favorable to the prosecution, the evidence that after Mayers punched defendant and was running away, defendant put his car in drive, chased Mayers down a sidewalk to catch up to him and, after running over Mayers the first time, drove through a fence, turned around, and ran over him a second time before fleeing the scene, was sufficient for a jury to have found premeditation beyond a reasonable doubt. A jury could have reasonably inferred from this evidence that at several points, including when defendant turned his car around

before running over Mayers a second time, defendant had time to take a "second look" at his actions. In addition, evidence demonstrating that after the crime, defendant attempted to hide the car and lied to the police about his involvement further supports a finding of premeditation. Consequently, considering the evidence of the nature and circumstances surrounding the killing, a jury could have rationally inferred that defendant acted on a decided course of action rather than an unplanned impulse.

Defendant argues that the evidence was insufficient to sustain his conviction because the prosecution witnesses' testimony was not credible, Brewer was intoxicated on the night of the offense and should not be believed, and because the autopsy report did not indicate that Mayers was run over more than once, as the witnesses claim. In making these arguments, however, defendant does not acknowledge that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v. Lockett*, 295 Mich. App. 165, 180; 814 N.W.2d 295 (2012), that this deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich. at 400, and that it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (citation omitted). Defendant's challenges are related to the weight of the evidence rather than its sufficiency. *See People v. Scotts*, 80 Mich. App. 1, 9; 263 N.W.2d 272 (1977) (recognizing that "the credibility of witnesses is a matter of weight, not sufficiency.) Moreover, this Court will not interfere with the trier of fact's role of determining issues of weight and credibility related to the record evidence. *Unger*, 278 Mich. App. at 222. The evidence was sufficient to sustain defendant's conviction of first-degree premeditated murder.

*Presswood*, 2018 WL 5276305, at *3–4.

18

**2**

The clearly established federal law governing Presswood's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause.   In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context.   As the United States Court of Appeals for the Sixth Circuit has explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:
>
> > First, on direct appeal, it is the responsibility of the

19

jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.   A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.   The federal court instead may do so only if the state court decision was objectively unreasonable.

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)).   *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a *Jackson* claim on habeas review, a reviewing court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

### 3

Here, given the two layers of deference the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that a jury could have found beyond a reasonable doubt that Presswood

20

acted with premeditation and an intent to kill.   The trial testimony revealed that Presswood hit Mayers' car with his car, that Mayers exited his car and punched Presswood, and that Mayers was running away when Presswood chased him with his car and ran him over.   Presswood then drove through a fence, turned around, and ran over Mayers a second time before fleeing the scene. (*See, e.g.*, 5/3/17 Trial Tr., ECF No. 15-7, PageID.730-733, 821-822; 5/4/17 Trial Tr., ECF No. 15-8, PageID.898-905, PageID.997-1000.)   The Michigan Court of Appeals did not unreasonably conclude that from that evidence, a jury could have found beyond a reasonable doubt that Presswood intentionally killed Mayers by running him over with his car (twice) and that he acted with premeditation.

For all of these reasons, Presswood is not entitled to relief on his insufficiency-of-the-evidence claim.

## E

The Court next turns to Presswood's ineffective assistance of counsel claims. Presswood raised these claims both on direct review in the Michigan Court of Appeals and in his motion for relief from judgment filed in the state trial court.   The Court will review each claim separately below.   None of the claims entitle him to federal habeas relief.

**1**

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   An attorney's performance is deficient where it falls "below an objective standard of reasonableness." *Id*. at 688.   To show prejudice under *Strickland*, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.   Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential *Strickland* standard and to the deferential standard of AEDPA. *See Tackett*, 956 F.3d at 373 (describing *Strickland* standard in context of habeas petition).   "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id*. (internal punctuation and citation omitted).

**2**

Presswood first asserts that his trial counsel was ineffective for failing to call witnesses who would have testified about how he reacts when he is angry. Presswood says that that testimony could have shown that his killing of Mayers was

22

not premeditated.    Presswood raised this claim on direct appeal, and the Michigan

Court of Appeals rejected it:

> Defendant asserts that defense counsel was ineffective for
> failing to call witnesses, whose names he provided to
> defense counsel, who would have testified about
> defendant's "traits" when he is angry, which would have
> supported that defendant was provoked when Mayers
> struck him. Although defendant asserts that defense
> counsel should have called these witnesses, defendant has
> not identified the witnesses, provided any witness
> affidavits, or identified any other evidence of record
> establishing that these witnesses were willing to testify at
> trial and could have provided favorable testimony. Absent
> such a showing, defendant has not established that he was
> prejudiced by trial counsel's failure to call the proposed
> witnesses at trial.

*Presswood*, 2018 WL 5276305, at *5 (internal footnote omitted).

The Michigan Court of Appeals' denial of relief on this claim was not contrary

to, nor did it unreasonably apply, clearly established federal law because Presswood

has not established the required prejudice.    As the Michigan Court of Appeals

correctly pointed out, Presswood has not submitted any affidavits or other evidence

from any potential witnesses that would have supported his assertion that they would

have been willing to provide testimony beneficial to his defense.    Without

providing that evidence, Presswood's conclusory allegations are insufficient to show

that he was prejudiced by his trial counsel's failure to call those witnesses. *See*

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *Wogenstahl v. Mitchell*, 668

F.3d 307, 335–36 (6th Cir. 2012) (citing *Workman* and denying habeas relief).

Presswood is therefore not entitled to habeas relief on this claim.

**3**

Presswood next asserts that his trial counsel was ineffective for failing to advise him of his right to testify.    Presswood raised this claim on direct appeal, and the Michigan Court of Appeals denied relief:

> We reject defendant's claim that defense counsel was ineffective for advising him not to testify and not calling him as a witness because his testimony would have supported the defense. Defendant acknowledged on the record that he and defense counsel discussed whether defendant should testify. Defendant and defense counsel had discussions about the matter on "many" occasions. Defendant further acknowledged that he had "an opportunity to think long and hard" about whether he would testify, and that he and defense counsel had discussed "both the pros and cons, the negative aspects of testifying perhaps, and also the positive aspects[.]" And when asked if he had made a decision, defendant stated: "I don't want to testify."
>
> While the record does not disclose what specific advice defense counsel may have given regarding whether defendant should testify, defendant does not claim that he was unaware of his right to testify, or that defense counsel coerced him into not testifying. Given that the discussions included the "pros and cons" of testifying, it can be presumed that, for strategic reasons, counsel advised defendant that it would be against defendant's best interests to testify. It is also apparent that defendant was aware that it was his final decision whether to testify or not to testify, and he acknowledged on the record that he understood that he had an absolute right to testify or not

24

testify. As previously referenced, the decision whether to call defendant as a witness was a matter of trial strategy, *Russell*, 297 Mich. App. at 716, for which counsel has "wide discretion[,]" *Heft*, 299 Mich. App. at 83, and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's advice that defendant not testify.

*Presswood*, 2018 WL 5276305, at *5–6.

Presswood has not shown that the Michigan Court of Appeals' denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law.   This claim is belied by the trial record.   Presswood confirmed at trial that he consulted with his trial counsel, that they discussed the pros and cons of testifying on several occasions, that he understood he had a right to testify, and that he did not want to testify. (*See* 5/9/17 Trial Tr., ECF No. 15-10, PageID.1140-1143.)   Given that colloquy with the state trial court, it was not unreasonable for the Michigan Court of Appeals to conclude that Presswood knowingly and voluntarily waived his right to testify. *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).   Presswood is therefore not entitled to habeas relief on this claim.

**4**

Next, Presswood asserts that his trial counsel was ineffective for failing to object to certain expert and lay witness testimony.   Presswood raised this claim on direct appeal, and the Michigan Court of Appeals rejected it:

25

In his last ineffective assistance of counsel claim, defendant makes additional cursory complaints about what counsel failed to do, without providing any proper analysis. Specifically, defendant complains that defense counsel should have objected to the expert "classification" of the prosecution's expert witnesses and to "all of the lay persons' testimony" because they were intoxicated at the time of the incident and their statements were inconsistent. Defendant does not, however, identify any legal ground on which defense counsel could have lodged successful objections. As previously noted, defendant is required to do more than merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *Kelly*, 231 Mich. App. at 640-641. Consequently, defendant's remaining claims of ineffective assistance of counsel are abandoned.

*Presswood*, 2018 WL 5276305, at *5–6.

Presswood has not shown that the Michigan Court of Appeals' denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law.   He has not identified any legal basis upon which his trial counsel should have objected.   Nor has he shown that any such objection would have been successful. Presswood's conclusory assertions that his trial counsel should have raised unidentified objections to the witnesses' testimony is insufficient to warrant habeas relief.   Presswood is therefore not entitled to habeas relief on this claim.

## 5

Presswood next argues that his trial counsel was ineffective for failing to investigate his case and consult with experts to counteract the prosecution's case.

26

Presswood raised this claim in his first motion for relief from judgment in the state trial court, and that court denied relief pursuant to Michigan Court Rule 6.508(D)(2).

Under any standard of review, Presswood has not shown an entitlement to relief on this claim because he has not shown the required prejudice.   For example, he has not identified what evidence his trial counsel should have uncovered or explained how that evidence would have led to a different result at trial.   Nor has Presswood presented affidavits or other evidence from any potential experts to support his assertion that they would have been willing to testify and would have provided testimony beneficial to his defense.   For all of these reasons, Presswood's conclusory assertions that his trial counsel failed to investigate his case are insufficient to justify habeas relief.

## 6

For his last ineffective assistance claim, Presswood argues that his appellate counsel was ineffective for failing to raise issues on direct appeal, for failing to seek an evidentiary hearing and file various motions, and for failing to consult with an expert.   Presswood raised these claims in his first motion for relief from judgment in the state trial court.   That court denied relief pursuant to Michigan Court Rule 6.508(D)(3).   Under any standard of review, none of the alleged errors of Presswood's appellate counsel entitle him to federal habeas relief.

Presswood first asserts that his appellate counsel was ineffective for failing to raise the issues that he raised in his *pro se* brief on direct appeal.   But it is well-settled that a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).   "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). *See also McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).   Appellate counsel may be deemed ineffective for omitting a "dead-bang winner," defined as an issue which is obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).   Presswood has failed to make that showing here.   He has not shown that any of the claims raised in his *pro se* appellate brief were "dead-bang winner[s]."   Moreover, given that (1) Presswood was able to raise those claims on appeal in his *pro se* brief and (2) the Michigan Court of Appeals denied relief on those claims, Presswood cannot show that he was prejudiced by his appellate counsel's failure to raise the claims in his appellate brief. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

28

Presswood next asserts that his appellate counsel was ineffective for failing to raise on direct appeal the claims that he raised in his first motion for relief from judgment.   But Presswood has not persuaded the Court that any of those claims were "dead-bang winners" or that there was a reasonable likelihood that the inclusion of any of those claims on direct appeal would have resulted in a reversal of his conviction.   Thus, Presswood cannot show that he was prejudiced by his appellate counsel's failure to raise the claims on appeal. *See Moore*, 708 F.3d at 776; *Coley*, 706 F.3d at 752.

Lastly, Presswood says that appellate counsel was ineffective for failing to seek an evidentiary hearing, file motions, and consult with an expert.   But Presswood has not provided any factual support for those claims or otherwise shown that the requests were warranted or would have been beneficial to his defense.   He therefore has failed to present any evidence that his appellate counsel was ineffective with respect to those claims.

For all of these reasons, none of Presswood's ineffective assistance claims entitle him to habeas relief.

## F

Presswood next argues that he is entitled to habeas relief because the prosecutor engaged in misconduct by (1) presenting false testimony from witnesses and (2) displaying a crime scene diagram throughout the trial.   The Court will

29

examine each act of alleged misconduct separately.    Neither entitle Presswood to

habeas relief.

## 1

Presswood first asserts that the prosecutor engaged in misconduct by

knowingly presenting false testimony from witnesses Petrina Golden, Carl Horton,

Teounka Horton, and Jamar Brewer.    Presswood raised this claim on direct appeal,

and the Michigan Court of Appeals denied relief as follows:

> The arguments made by defendant do not establish that the
> prosecutor knowingly used false testimony to obtain
> defendant's conviction. To support his claim, defendant
> provides only one citation to the record, which is Brewer's
> preliminary examination testimony that Mayers tried to
> punch defendant though the window. This testimony does
> not support defendant's claim that the prosecution's four
> eyewitnesses "lied throughout their initial statements,"
> and, more significantly, that the prosecutor engaged in
> misconduct by knowingly presenting false testimony.
> Although there may have been instances when the
> eyewitnesses' trial testimony differed from their
> statements or the testimony of other witnesses, there is no
> indication that the prosecutor sought to conceal those
> inconsistencies. Indeed, the record shows that defense
> counsel cross-examined the eyewitness at length about
> their observations and police statements. Further, the fact
> that testimony was adduced at trial that conflicted with
> other witnesses' testimony does not lead to the conclusion
> that the prosecutor knowingly used perjured testimony.
>
> Similarly, the fact that the eyewitnesses drank alcohol in
> the hours leading up to when Mayers died does not mean
> that their testimony was false. Indeed, the jury was well
> aware of the intoxication evidence. Defense counsel

30

questioned the witnesses multiple times about how much they had to drink, and if they were intoxicated or "high" that night. In closing argument, the prosecutor clearly acknowledged that the witnesses had been drinking, stating: "You learned that everyone had been drinking that day[.]" Defendant's arguments do not involve an issue of perjury, but of witness credibility. Defense counsel explored the credibility problems with the eyewitnesses' testimony, including the fact that they were drinking that night. The jury was free to believe or disbelieve all or any portion of the witnesses' trial testimony. *Unger*, 278 Mich. App. at 222.

Within this issue, defendant also contends that by presenting these witnesses, the prosecutor used "deliberate deception of a court" by presenting testimony that was not credible. "A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v. Matley* (On Remand), 242 Mich. App. 101, 102; 617 N.W.2d 718 (2000) (quotation marks and citation omitted). However, it is clear that defendant has not shown that the prosecutor sought to make a material misrepresentation to the court. Again, both parties questioned the witnesses about their observations and statements to the police. Further, defense counsel, the trial court, and the jury were all aware that the witnesses had been drinking before Mayers was killed. Defendant has not demonstrated that material facts were concealed from the court (or the jury). We therefore reject defendant's unpreserved and unsupported claims of prosecutorial misconduct.

*Presswood*, 2018 WL 5276305, at *6–7.

Presswood has not shown that the Michigan Court of Appeals' denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law.  At most, Presswood has demonstrated that the witnesses' testimony varied

31

from their prior police statements and/or that the witnesses provided inconsistent or contradictory testimony.    But the fact that a witness contradicts himself or changes his story does not establish perjury.    *See Macon v. Davis*, 450 F. App'x 491, 493 (6th Cir. 2011) ("[M]ere inconsistent statements by the same witness are insufficient to establish indisputable falsity."). Inconsistencies among witnesses' testimony also do not establish the knowing use of false testimony. *See Coe*, 161 F.3d at 343. And here, Presswood has not presented any evidence that the witnesses' testimony was false and/or that the prosecutor knew the testimony was false.    Presswood is therefore not entitled to habeas relief on this claim.

2

Presswood also asserts that the prosecutor engaged in misconduct when the prosecutor left crime scene photos on display throughout the trial.    Presswood raised this claim on direct appeal, and the Michigan Court of Appeals rejected it:

> We reject defendant's last argument that the prosecutor engaged in misconduct, which denied him a fair trial and due process, when she left a crime scene diagram on display for the duration of the trial. Preliminarily, defendant has not provided any citation to the record concerning the crime scene diagram, but mentions that it was used during the testimony of forensic scientist Keith Lamont. On the fourth day of trial, during the testimony of Lamont, who was qualified as an expert in trace evidence and physical match identification, he used a PowerPoint that contained slides illustrating his findings. It appears that the last slide that Lamont discussed, which he noted was at the end of his Power Point, was a comparison of

32

two paint chips. Defendant does not explain why or how the prosecutor used a longer view of a slide comparing paint chips to "coach" future witnesses or taint the jury. Additionally, the prosecutor's next witness was Flint Police Department Sergeant Jason Groulx, who was qualified as an expert in traffic crash reconstruction. Immediately after the conclusion of Lamont's testimony, the prosecutor informed the trial court that she had "a bit of a technology change for our next witness." This leads to the logical conclusion that Lamont's PowerPoint was not left on display, but taken down for Sergeant Groulx's materials, which actually included a crime scene drawing.

And, even if it was actually Sergeant Groulx's crime scene drawing that was the exhibit left on display, this issue still has no merit. The only witness who testified after Sergeant Groulx was Michigan State Police Detective Tiffany Watson. Indeed, the chief prosecution witnesses, including the eyewitnesses, testified on the second and third days of trial, i.e., before the crime scene drawing would have been left on display. Thus, in addition to failing to explain how the prosecutor improperly coached witnesses or tainted the jury with an alleged extended display of a crime scene drawing, defendant also fails to mention that there was only one, and at most two witnesses, who would have even observed the extended display of the drawing or PowerPoint while testifying. Accordingly, defendant is not entitled to appellate relief.

*Presswood*, 2018 WL 5276305, at *7–8.

Presswood has not shown that the Michigan Court of Appeals' denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law.   In his petition, Presswood identifies two exhibits that he says the prosecutor wrongly displayed during trial: an aerial image of the area near the nightclub

(identified as PX#2) and a crime scene drawing done by Sergeant Groulx (originally identified as PX#775; enlarged version identified as PX#776).   But he fails to explain with any specificity how the prosecutor's use of these exhibits – which were admitted into evidence without objection – or their display during trial improperly influenced any witness testimony or was otherwise improper.   Presswood's conclusory assertions of alleged misconduct do not entitle him to habeas relief.

## G

Next, Presswood argues that the state trial court erred when it admitted allegedly false testimony from witnesses Golden, Carl Horton, Teounka Horton, and Brewer and testimony from witnesses stating that Presswood ran over Mayers twice when the autopsy report does not indicate that Mayers was run over more than once. Presswood raised this claim on direct appeal, and the Michigan Court of Appeals denied relief on the basis that Presswood failed to show that the identified testimony was false:

> As previously discussed, defendant has not demonstrated that the prosecutor knowingly presented false testimony, or that the eyewitnesses' testimony was actually false. In this issue, defendant adds the argument that because the witnesses testified that defendant ran over Mayers twice, although the autopsy report does not corroborate that Mayers was run over more than once, the witnesses' testimony was false. Again, we disagree.
>
> Preliminarily, defendant has not provided a citation to the record that supports that the medical examiner definitively

34

concluded that Mayers was hit only one time. The medical examiner testified that Mayers suffered numerous serious injuries, including multiple blunt force injuries, skin tears, and fractures, which were consistent with a pedestrian being hit by a car and dragged. His determination of the cause of death was "[m]ultiple blunt force injuries to the pedestrian [resulting from a] motor vehicle collision" and the manner of death was homicide. He explained how he gathered the information to make his determination, and testified that he was told that Mayers was hit by a car and "based on the history that he ha[d], the car was used to pursue this person during the altercation." Clearly, in this case, the medical examiner was not presented to testify if Mayers was hit once or twice, but to testify about the injuries he suffered as a result of being "hit by a car," and defense counsel did not question him about that point.

Further, even if the medical examiner had concluded that Mayers was hit only once, that finding would not lead to the conclusion that the eyewitnesses, one of whom was defendant's good friend, testified falsely about their own observations. Rather, the matter would still be an issue of witness credibility for the jury to decide. It is well established that "absent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility" for the jury's view. *People v. Lemmon*, 456 Mich. 625, 641; 576 N.W.2d 129 (1998). Thus, defendant has not argued a logical ground on which the trial court would have properly precluded these witnesses from testifying about their own observations. Accordingly, defendant is not entitled to a new trial based on his unpreserved and unsupported claim that the trial court abused its discretion and denied defendant due process by allowing false testimony.

*Presswood*, 2018 WL 5276305, at *7.

Presswood has not shown that the Michigan Court of Appeals' denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal

law because he has failed to support this claim with any evidence.   First, to the extent that Presswood challenges the application of state evidentiary law, such claims are not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68; *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).   More importantly, Presswood has not identified any evidence that the identified testimony was actually false.   Nor has he presented any evidence that the medical examiner's report or testimony contradicted the witnesses' testimony that he ran over Mayers more than once.   Finally, to the extent there were any discrepancies in the testimony, they were for the jury, not the trial court or this Court, to resolve. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019) (stating that it "is the province of the jury to assess the credibility of witnesses").   For all of these reasons, Presswood is not entitled to habeas relief on this claim.

## H

Presswood next asserts that the state trial court failed to control the proceedings.   This claim essentially reiterates his earlier claim that certain witnesses provided false testimony and that the state trial court failed to take corrective action in response to that testimony.   Presswood raised this claim in his first motion for relief from judgment in the state trial court, and that court denied the claim pursuant to Michigan Court Rule 6.508(D)(2) on the basis that Presswood

36

raised the same claim on direct appeal, was denied relief, and failed to show a retroactive change in the law or new evidence creating a significant possibility of innocence that would entitle him to relief. (*See Presswood*, No. 15-037810-FC (Genesee Co. Cir. Ct. Aug. 5, 2020); ECF No. 15-17.)

Under any standard, Presswood is not entitled to habeas relief on this claim. Presswood raised the substance of this claim on direct appeal, and the Michigan Court of Appeals denied relief on the basis that Presswood failed to show that the prosecutor presented false testimony. *See Presswood*, 2018 WL 5276305, at *7. Thus, for all of the reasons explained above (*see supra* Section (IV)(F)(1)), Presswood has failed to establish a constitutional violation related to the purported false testimony.   He is therefore not entitled to federal habeas relief on this claim.

## I

Next, Presswood argues that he is entitled to habeas relief because he is entitled to jail credit for the time he spent in jail prior to sentencing.   Presswood is not entitled to relief on this claim because it is now moot.   The state court record reveals that the state trial court amended Presswood's sentence on June 19, 2018, to add 24 months and 329 days of jail credit – a total of 1,060 days. (*See* Am. Sent. Judg., ECF No. 15-14.)   Thus, there is no further relief for this Court to grant on this claim.

**J**

Finally, Presswood asserts that he is entitled to habeas relief because the prosecution's accident reconstruction expert, Sergeant Jason Groulx, was corrupt and the prosecutor engaged in misconduct by utilizing Groulx as a witness at trial without disclosing that corruption to Presswood.   More specifically, Presswood says that Groulx engaged in corruption when he sold non-publicly-available crash reports to individuals who then provided them to marketing companies.   Presswood first raised these claims in his second motion for relief from judgment in the state trial court, and that court denied relief.

Presswood's claims related to Groulx's testimony lack merit.   While the legal basis for these claims is not entirely clear from Presswood's supplemented petition, in his second motion for relief from judgment, he framed these claims as arising from the prosecution's failure to disclose evidence.    But Presswood has not shown that the prosecution had any evidence in its possession at the time of trial related to Groulx's corruption.    Thus, Presswood has not shown that the prosecutors failed to provide evidence of that known corruption to Presswood. Under these circumstances, Presswood is not entitled to federal habeas relief on this claim.

## V

For the reasons explained above, the Court concludes that Presswood is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** Presswood's habeas petition, as supplemented (ECF Nos. 1, 11).

Before Presswood may appeal, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Presswood has made no such showing here. Accordingly, the Court **DENIES** Presswood a certificate of appealability.

Finally, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Presswood leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:    September 30, 2025          UNITED STATES DISTRICT JUDGE

39

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan

Case Manager

(313) 234-5126